IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MCKEN V. CARRINGTON, ANWILI       §
CAROL CARRINGTON,                 §
                                  §
                Plaintiffs,       §
                                  §
VS.                               §    CIVIL ACTION H-12-1542
                                  §
BANK OF AMERICA, N.A., SUCCESSOR  §
BY MERGER TO BAC HOME LOANS       §
SERVICING, L.P., F/K/A            §
COUNTRYWIDE HOME LOANS, L.P.,     §
                                  §
                Defendant.        §

## OPINION AND ORDER OF DISMISSAL

Pending before the Court in the above referenced cause, arising out of a mortgage and removed from state court, are the following motions: (1) Defendant Bank of America, N.A.'s ("BANA's") motion to dismiss Plaintiff's Original Petition (instrument #4) under Federal Rule of Civil Procedure 12(b); (2) BANA's motion to dismiss Plaintiffs' First Amended Petition (#9) under Rule 12(b)(6); and (3) *pro se* Plaintiffs McKen Carrington and Carol Carrington's motion to remand (#6).[1]

This case was originally filed in the 268th District Court of Fort Bend County, Texas. Plaintiffs' Original Petition (#1-2) alleges that in 2003, Defendant "targeted Plaintiffs, members of a minority group, for a subprime loan of over 7% on a 30-year

---

[1] Although Plaintiffs are *pro se*, Mr. McKen Carrington is apparently a licensed attorney, as he has signed the pleadings filed in this court with his State Bar number.

-1-

mortgage," pursuant to which they signed a Texas Home Equity Security instrument (the "agreement") providing that over the life of the loan they were to pay $906,148.23.  #1-2 at ¶ 6.  They allege that unknown to them, Defendants had been engaging in predatory lending practices with subprime loans that greatly inflated the cost of financing. *Id.* at ¶6.2.  Defendant's Truth in Lending disclosure statement was for a fixed monthly payment of $2,517,08 for 359 months and $2,516.51 of the 360th month. *Id.* at § 6.4.  The Original Petition asserts, "From the start, Defendants engaged in a 'bait and switch' by causing the monthly payments to exceed the Truth in Lending Statement by 27%, to $3,204.07." *Id.* at ¶ 6.5. Today they demand a monthly payment of $4,325.75 and refuse to reduce their excessive demands. *Id.* at ¶ 6.6.  The Original Petition also unclearly states, "Inasmuch as Defendant's [*sic*] have come to a legal settlement with the United States Government on similar borrowers, Plaintiffs are entitled to similar reliefs due to the violations identified in that cause of action brought by the Government against the Defendants." #1-2 at ¶9. Plaintiffs identify their causes of action as breach of contract and violations of the Real Estate Practices Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, and imply violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* Instrument #1.

BANA removed the case on federal question jurisdiction, based on Plaintiffs' RESPA and TILA claims and state that the Court has

supplemental jurisdiction under 28 U.S.C. § 1367(a) over the remaining state-law claims. It then filed its first motion to dismiss (#4) on May 29, 2012. On June 15, 2012 Plaintiffs filed a First Amended Petition (#5), which asserted totally new causes of action for violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq.*, and violation of the Texas Debt Collection Act ("TDCA"), Texas Fin. Code §§ 392.304(s)(8) and (a)(19), breach of reinstatement agreement, negligence, and breach of contractual duty to act in good faith and duty not to retaliate.[2] The Amended Petition therefore supersedes the Original Petition. Moreover Defendant filed a new motion to dismiss Plaintiffs' First Amended Petition. Therefore its first motion to dismiss (#4) is MOOT.[3]

### Plaintiffs' Motion to Remand (#6)

Moreover also on June 15, 2012, Plaintiffs filed a motion to remand (#6), arguing that its amended complaint in essence nonsuits any RESPA or TILA claims, that all its claims are now under state

---

[2] Rule 15(a)(1)(B) permits a party to file an amended complaint as a matter of course, without having to obtain leave of court or consent of the opposing party, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

[3] Because Plaintiffs do reference in their response to the second motion to dismiss documents that they filed in response to this moot motion (#7), the Court considers them as part of the response to the second motion (#18).

law, and that therefore the Court lacks federal question jurisdiction over this suit.  Thus Plaintiffs insist that the case must be remanded.

Charging Plaintiffs with engaging in forum manipulation to deprive the Court of jurisdiction by deleting the RESPA and TILA claims and asserting only state law claims, BANA first filed a Supplemental Notice of Removal (#10), which asserts that the Court has diversity jurisdiction over these state law causes of action because Plaintiffs are citizens of Texas while BANA is a citizen of North Carolina, which its articles of association establish as the location of its main office.  *See* 28 U.S.C. § 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006)("[A] national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located.").  *See also Hill v. Bank of America Corp.*, No. 06-cv-804GE, 2006 WL 1518874, *1 (N.D. Ga. May 20, 2006)("Bank of America, N.A. . . . is a national banking association located in the State of North Carolina, as designated in its articles of association.").  Because plaintiffs seek a declaratory judgment regarding their alleged modification requests and reinstatement agreement, the amount in controversy is measured by the property's value.  *See, e.g., Leininger v. Leininger*, 705 F.2c 727, 729 (5th Cir. 1983).  The property in this dispute is currently appraised at $522,270, according to the Fort Bend County Central Appraisal District, while the original

principal balance of Plaintiffs' loan was $494,000.00. Thus the amount in controversy exceeds $75,000.00.

Furthermore, in its response (#11) to the motion to remand, BANA points out that "Plaintiffs' position is completely unfounded because removal jurisdiction is determined at the time a case is removed based on the pleadings then on file. Subsequent amendments do not deprive the Court of jurisdiction." #11, p. 1. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)("a complaint amended post-removal cannot divest a federal court of jurisdiction"; "Without such a rule disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint . . . ."). Furthermore, the Amended Petition establishes that the Court has, and did have from the commencement of this suit, diversity jurisdiction, as argued in BANA's Supplemental Notice of Removal.

The Court agrees that "a post-removal amendment to a petition that deletes all federal claims, leaving only pendent state claims, *does not* divest the district court of its properly triggered subject matter jurisdiction." *Hook v. Morrison Milling Co.*, 38 F.3d 776, 780 (5th Cir. 1994). Nevertheless, if a post-removal amendment deletes the only federal claim and leaves only state law claims, 28 U.S.C. § 13767(c) applies and the court must decide whether to remand pursuant to it:

(c)   The   district   court   may   decline   to   exercise supplemental   jurisdiction   over   a   claim   under subsection(a) if--

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, or

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(e) in exceptional circumstances, there are compelling reasons for declining jurisdiction.

In   addition   to   this   statute,   in   deciding   whether   to   retain jurisdiction   the   court   must   consider   the   factors   of   judicial economy,   convenience,   fairness   and   comity.   *Newport Ltd. v. Sears, Roebuck & Co.*, 941 F.2d 302, 307 (5th Cir. 1991), *cert. denied*, 502 U.S. 1096 (1992).   *See United Mine Workers of America v. Gibbs*, 383 U.S.   715,   726   (1966)("It   has   consistently   been   recognized   that pendent   jurisdiction   is   a   doctrine   of   discretion,   not   of plaintiff's   right.   Its   justification   lies   in   considerations   of judicial   economy,   convenience   and   fairness   to   litigants;   if these are   not   present   a   federal   court   should   hesitate   to   exercise jurisdiction over state claims . . . .").   The general rule is to decline to exercise jurisdiction over pendent state-law claim when all   federal   claims   are   eliminated   from   a   case   before   trial. *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).   If the federal claim is deleted at an early stage of the litigation, there is substantial reason to chose

not to retain jurisdiction.  *Enochs v. Lampasas County*, 641 F.3d 155, 161 (5ᵗʰ Cir. 2011).

Here, however, the Court at the time of removal had diversity jurisdiction over all the claims in the original petition even though BANA did not remove on those grounds and it still has diversity jurisdiction over the parties and the amended state-law claims.  Thus the Court denies the motion to remand.

**BANA's Motion to Dismiss First Amended Petition (#9)**

**Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5ᵗʰ Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5ᵗʰ Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Bell Atlantic Corp. v. Twombly*, 127

S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief

that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.   "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b).  *Iqbal*, 129 S. Ct. at 1949.  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.*   The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine  the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994).  *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken"). Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment.  *Funk v.*

*Stryker Corp.*, 631 F.3d 777, 780 (5ᵗʰ Cir. 2011).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

**Allegations in Plaintiffs' First Amended Petition (#5)**

Plaintiffs claim that BANA has violated and continues to violate the DTPA by misleading them (1) by promising to act upon requests for mortgage modifications within a specific period of time, but failing to do so; (2) to submit documents on numerous occasions without bringing the modification application to a conclusion; (3) with false assurance that the home would not be foreclosed while their requests for modifications were pending, but sending them foreclosure notices while they waited for approval; (4) that Plaintiffs had to be in default on their mortgages to be eligible for modifications when, in fact, current borrowers are eligible for assistance; (5) with inaccurate and deceptive reasons for denying their requests for modifications; and (6) by causing confusion about the approval of BANA's loan modification service. These false promises resulted in Plaintiffs' being billed for delinquency fees and inaccurate charges.

Plaintiffs assert the following conduct by BANA is misrepresenting its mortgage modification program to Plaintiffs.

-10-

Beginning on November 2, 2010, Plaintiffs called BANA on fifteen occasions (November 1, 2010; December 9, 2010; December 12, 2010; January 10, 2011; January 13, 2011; January 22, 2011; February 7, 2011; February 28, 2011; March 7, 2011; March 8, 2011; March 9, 2011; March 13, 2011; March 16, 2011; March 21, 2011; and March 25, 2011) and met with BANA customer service representatives, most identified by name in the Amended Petition, in the Houston office and submitted and resubmitted their paperwork on six occasions (November 23, 2010; January 10, 2011; February 9, 2011; February 28, 2011; March 4, 2011; and March 9, 2011). On April 4, 2011, BANA denied their application by letter. Asserting that BANA's calculation of their net income was wrong, Plaintiffs sent an appeal to Mr. Kris of the Appeals Department. On May 4, 2011 BANA promised the appeal would be settled in thirty days, but asked for a new application, which had the same result as the former. On August 8, 2011 Plaintiffs filed a complaint with the Controller of Currency of the United States. On August 10, 2011, BANA's Susanna Serrano ("Serrano") called and told them that she had been assigned the case and would have an answer in 2-4 days, but she did not.

Despite the ongoing modification process, on August 19, 2011 BANA issued a Notice of Foreclosure. Between August 18-30, 2011 Plaintiffs made several calls to BANA and finally spoke to Ms. Hamera ("Hamera"), who angrily explained that although Plaintiffs met the modification standard, the situation was not critical. On

August 30, 2011 they received a call from an angry Serrano, who told them she was dropping out of the case, but that she was seeking a modification for a 2% rate and that the process would have to start over.  She said that she would refer the matter to Kathlyn Zoewoski, "who continued the patter of retaliation of Ms. Susanna Serrano."  #5 at ¶ 16.

Plaintiffs claim that BANA settled a lawsuit with the Texas Attorney General for engaging in unfair and deceptive business practices that placed borrowers like Plaintiffs in risky, high-priced, and ultimately unaffordable mortgage loans that escalated to an unaffordable level.  In underwriting the loan to Plaintiffs, BANA improperly excluded debts of Plaintiffs, omitted their tax and insurance obligations, and offered a teaser that was never actually available.  Defendants shifted the danger of failure of these risky loans and gained much needed capital by bundling them and selling in the secondary market.  Plaintiffs claim they are the victims of Defendant's deceptive business practices.  Furthermore BANA added insurance and tax costs to Plaintiffs' obligation in 2005, and Plaintiffs paid this sum through 2010 when they requested a loan modification under the Making Home Affordable Program ("HAMP"), as well as under BANA's in-house modification program.

Regarding their first cause of action, violations of § 17.45(6) of the DTPA, Plaintiffs assert that BANA advertised, offered, solicited sales of, and sold real estate loans and related

-12-

goods and services to Plaintiffs.  In the course of its dealings with Plaintiffs and in furtherance of their own direct pecuniary and business gains, BABA committed deceptive acts or made material misrepresentations or omissions in violation of § 17.46(a) and (b)[4] their business of servicing retail residential loans to borrowers in Texas.

Regarding their cause of action for misrepresentation, they allege that BANA misrepresented to Plaintiffs that delinquency in payments was required to qualify for a loan modification.  When Plaintiffs fell into delinquency, it generated additional charges. When Plaintiffs contacted BANA's agents, they represented that Plaintiffs' loan would be modified but it never was.  BANA repeatedly promised answers on Plaintiffs' modification requests within a specific time frame, but then lost or mislaid Plaintiffs'

_____

[4] Section 17.46(a)-(b) provides in relevant part,

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, and 17.61 of this code.

(b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts: . . .

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has sponsorship, approval, status, affiliation, or connection which he does not . . . .

-13-

documents, resulting in higher fees and charges and requiring Plaintiffs to submit additional documentation on six occasions. BANA routinely failed to notify Plaintiffs about missing documents. Although Plaintiffs called BANA regularly to check on the status of their modification requests and were promised updates which almost never came, Plaintiffs did receive foreclosure-related communications, including collection calls.   The lengthy waiting period was inconsistent with BANA's oral and written communications and extremely trying for Plaintiffs.   Moreover BANA misrepresented the basis for denying modifications, at various times citing too much income, too little income, too many telephone calls, the situation was not critical, and inability to reach Plaintiffs.

Third, BANA repeatedly promised answers on Plaintiffs' modification requests within a specific frame time but failed to provide them.   It also lost or mislaid Plaintiffs' documents, causing them higher fees and charges and having to re-submit the same documentation on several occasions.   BANA routinely failed to notify them of missing documents, rarely responded to requests for update on the status of their modification requests, but sent foreclosure-related communications, including collection calls. BANA told Plaintiffs by letter and by phone differing reasons why their requests for modification were denied: too much income, too little income to support modified payments, too many telephone calls, situation not critical, and inability to reach Plaintiffs.

Fourth, BANA violated the TDCA by adding thousands of dollars in late fees when its agents represented that Plaintiffs' modification would not be approved if they continued to pay their mortgage during the modification period. Relying on this, Plaintiffs became delinquent and then suffered additional charges.

Fifth, BANA breached the reinstatement agreement that Plaintiffs reached with BANA agent Cindy P. on September 9, 2011, under which BANA was to discontinue imposing late charges. Although Plaintiff sent Defendant a check for $29,432.47 under the contract, BANA has denied the existence of the agreement and has added late fees.

Sixth, Plaintiffs assert claims for negligence and contractual duty to act in good faith. They argue that BANA has a duty to bill Plaintiffs accurately, but has failed to do so, instead advising Plaintiffs to make payments that were not honored by the bank and by losing and misplacing Plaintiffs' documents, thereby making Plaintiffs spend time and money. On August 30, 2011 Hamera failed to act in good faith when she denied Plaintiffs a benefit for which they were qualified on the grounds that the situation was not critical. BANA also violated its duty not to retaliate against Plaintiffs who filed a complaint against the bank. Furthermore also on August 30, 2011 Serrano violated a contractual duty and a duty not to retaliate when, in an angry telephone call, she indicated that she was dropping out of the case because of

Plaintiffs' complaints.

Plaintiffs seek a declaratory judgment that Defendant added fees to Plaintiffs's account in violation of Texas law and contractual agreements with Plaintiffs, that BANA's agents failed to act in good faith and retaliated against Plaintiffs in their modification requests and the reinstatement agreement, and a declaration that BANA must remove additional fees and comply with contractual agreements made with Plaintiffs.

**BANA's Motion to Dismiss (#9)**

BANA first insists that Plaintiffs DTPA claim fails as a matter of law because they are not "consumers" as defined by the Act and therefore lack standing to bring an action under it.  Tex. Bus. & Com. Code § 1750(a).  *See Marketic v. U.S. Bank Nat'l Ass'n*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006)("a plaintiff must qualify as a 'consumer' in order to have standing to bring an action under the DTPA"), *citing Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W. 2d 605, 608 (Tex. App.--San Antonio 1996, no writ).  "To qualify as a consumer under the DTPA, a person must have sought or acquired goods or services by purchase or lease, and the goods or services must form the basis of the complaint."  *Cameron v. Terrell & Garrett, Inc.*, 618 S.W. 2d 535, 539 (Tex. 1981); *see also* Tex. Bus. & Com. Code § 1745(4).  "Goods" are defined as "tangible chattels or real property purchased or leased for use."  Tex. Bus. & Com. Code § 17.45(1).  "Services" are defined as "work, labor, or

service purchased or leased for use, including services furnished in connection with the sale or repair of goods." Tex. Bus. & Commerce Code § 17.45(2). "[T]he key principle in determining consumer status is that the goods or services purchased must be an objective of the transaction, not merely incidental to it." *First State Bank v. Keilman*, 851 S.W. 2d 914, 929 (Tex. App.--Austin 1993, writ denied). Borrowing money does not constitute the acquisition of a good or service. *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W. 2d 169, 174-75 (Tex. 1980); *Fix v. Flagstar Bank, FSB*, 242 S.W. 3d 147, 159 (Tex. app.-Fort Worth 2007, pet. denied). If Plaintiffs are complaining about the servicing of their loan, especially seeking modification of their loan, these services were provided only to facilitate a mortgage loan and as a matter of law were not a "good" or "service" as contemplated by the DTPA. *See Hansberger v. EMC*, No. 04-08-0438-CV, (Tex. App.--San Antonio July 29, 2009), *citing Maginn v. Norwest Mortg. Inc.*, 919 S.W. 2d 164, 167 (Tex. App.--Austin 1996, not pet.)(finding loan servicing to be an ancillary service not contemplated by the DTPA); *Porter v. Countrywide Home Loans, Inc.*, No. V-7075, 2008 WL 2944670, *3 (S.D. Tex. July 24, 2008)("A borrower whose sole objective is a loan does not become a consumer merely because the lender provides services incidental to the loan that are not independent objectives of the transaction."); *Owens v. BAC Home Loans Servicing, L.P.*, No. H-11-2742, 2012 WL 1494231, *4

-17-

(S.D. Tex. Apr. 27, 2012)("Courts have held that 'subsequent actions related to mortgage accounts--for example, extensions of further credit or modifications of the original loan--do not satisfy the "good or services' element of the DTPA.'")(*quoting Broyles v. Chase Home Fin.*, No. 3:10-CV-2256-G, 2011 WL 1428904, *4 (N.D. Tex. Apr. 13, 2011); *Montalvo v. Bank of Am. Corp.*, No. SA-10-CV-0360 XR, 2012 WL 1078093, *11 (W.D. Tex. Mar, 30, 2012)(granting summary judgment on DTPA claim based on borrower's attempts to obtain a HAMP loan modification and holding that "borrower is not a consumer as a matter of law.").

Defendant next argues that Plaintiffs' claims for negligence and for misrepresentation, which also sound in negligence, fail for lack of an actionable duty, and they are also barred by the economic loss doctrine.  Plaintiffs have asserted that BANA owed them the duty to accurately bill, the duty to act in good faith, and the duty not to retaliate.  To state a claim for negligence, Plaintiffs must establish that BANA owed them a legal duty.  *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W. 3d 401, 404 (Tex. 2009); *Kroger Co. V. Elwood*, 197 S.W. 3d 793, 794 (Tex. 2006).  To show there is a duty in tort based on a contract, a plaintiff must show there is a special relationship between the parties.  *Farah v. Mafridge & Kormanik, P.C.*, 927 S.W. 3d 663, 675 (Tex. App.--Houston [1st Dist.] 1996, no writ).  No such relationship exists under a contract between a mortgagor and a mortgagee. *FDIC v. Coleman*, 795

S.W. 2d 706, 709 (Tex. 1990); *Collier v. Wells Fargo Home Mortg.*, No. 7:04-CV-86, 2006 WL 1464170, *8 (N.D. Tex. May 26, 2006), *citing UMLIC VP LLC v. T&M Sales & Envtl. Sys., Inc.*, 176 S.W. 3d 595, 612 (Tex. App.--Corpus Christi 2005, pet. denied.).   Because Plaintiffs cannot show any duty owed to them by BANA, their negligence claim fails as a matter of law.   The Court agrees.

"Under the economic loss rule, a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim."   *Dewayne Rogers Logging, Inc. V. Propac Indus., Ltd.*, 299 S.W. 3d 374, 382-83 (Tex. App. [12th Dist.] 2009), *citing Sterling Chems., Inc. v. Texaco, Inc.*, 259 S.W. 3d 793, 796 (Tex. App.--Houston [1st Dist.] 2007, pet. denied).   In other words, "to be entitled to damages for negligence, a party must plead and prove something more than mere economic harm."   *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W. 3d 444, 453 (Tex. App.--Dallas 2002)("To be entitled to damages for negligence, a party must plead and prove something more than mere economic harm."; *see also ½ Price Checks Cashed v. United Auto. Ins.*, No. 10-0434, p. 13 (Tex. June 24, 2011)("[U]nder the economic loss rule, . . . a claim sounds in contract when the only injury is economic loss to the subject of the contract itself."), *citing Med. City Dallas v. Carlisle Corp.*, 251 S.W. 3d 55, 61 (Tex. 2008). Here plaintiffs are limited to recovery under the note and deed of trust, the contracts through which they obtained the loan in

dispute.

Third, Defendant charges that Plaintiffs fail to state a TDCA claim when they allege that BANA added "thousands of dollars in late fees when its agents represented to Plaintiffs that their modifications would not be approved if they continue[d] to pay their mortgages during the modification period."[5]   Plaintiffs maintain that this statement was false and misleading because BANA added late payments to their account when Plaintiffs followed its agents' advice.   Plaintiffs do not identify the relevant provision of the TDCA that purportedly governs their claim.

Defendant insists that such alleged conduct is not "debt collection" as defined by the statute:   "an action, conduct, or practice in collection, or in soliciting for collection, consumer debts that are due or alleged to be due to a creditor."   Tex. Fin. Code § 392.001(5).[6]   BANA's representations about the requirements for a loan modification do not constitute an attempt to collect money from Plaintiffs.   If Plaintiffs argue that the remarks state

---

[5] The TDCA *inter alia* prohibits debt collectors from making fraudulent, deceptive, or misleading representations that "represent[] falsely the status or nature of services render by the debt collector or the debt collector's business." § 392.304(a)(14)

[6] Under the TDCA, debt collectors are prohibited from making fraudulent, deceptive or misleading representations about "the character, extent, or amount of a consumer debt" and from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."   Tex. Fin. Code §§ 392.304(a)(8) and 392.304(a)(19).

a claim under § 392.303(a)(2),[7] which can only succeed if the alleged charges were not "expressly authorized by the agreement creating the obligation or legally charged to the consumer," *id.*, that claim would fail because the security instrument specifically allows imposition of the late charges.   Texas Home Security Instrument ("Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and *any late charges due under the Note* [emphasis added]", Ex. A to #9.

Next Defendant argues that Plaintiffs' breach of contract claim is barred by the statute of frauds.  They claim they reached an oral reinstatement agreement with a agent of Defendant, Cindy P., on September 9, 2011, but that BANA denies the existence of the agreement and has added late fees.  BANA insists the statute of frauds requires any promise to modify either parties' rights and obligation under a loan to be in writing.  Tex. Bus. & Comm. Code § 26.02.  Under § 26.02, a loan agreement for more than $50,000 is not enforceable unless it is in writing and signed by the party to be bound or by that party's authorized representative.  *Bank of Texas, N.A. v. Gaubert*, 286 S.W. 3d 546, 555 (Tex. Civ. App.-- Dallas 2009, pet. dism'd w.o.j.); *Deuley v. Chase Home Fin. LLC*,

---

[7] Section 392.303(a)(2) provides, "In debt collection a debt collector may not use unfair of unconscionable means that employ the following practices . . . (2) collection or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."

No. 4:05-CV-4253, 2006 WL 1155230, *1 (S.D. Tex. Apr. 26, 2006), *citing Garcia v. Karam*, 276 S.W. 2d 255, 257 (Tex. 1955).  "[A] loan agreement includes agreements to 'delay repayment of money' or 'to otherwise extend credit or make a financial accommodation.'" *Deuley*, 2006 WL 1155230, at *3 (*quoting* Tex. Bus. & Com. Code § 26.02(a)(2)).  A plaintiff seeking to enforce an alleged oral contract bears the burden of showing that the statute of frauds is satisfied. *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 469 (5th Cir. 2002), *cert. denied*, 537 U.S. 950 (2002).  Plaintiffs here cannot do so because the amount of their loan far exceeds $50,000.00.  Ex. A at 1 (referencing promissory note secured by security instrument in the amount of $494,000.00).

## Plaintiffs' Response (#18)

Plaintiffs charge that BANA "prematurely filed this motion to conceal evidence, wrongfully removed this case to federal court because there is no subject matter jurisdiction and no complete diversity, and is trying to obtain a judgment without full compliance with Rule 26 Disclosures."  They contend that in the process of a loan modification, BANA wrongfully added thousands of dollars of charges and forced insurance on Plaintiffs.  Plaintiffs state they need discovery to demonstrate this pattern and practice of BANA's making promises it never intended to keep, so the doctrine of promissory estoppel estops Defendant from denying Plaintiffs' claims, a new allegation not mentioned in the First

Amended Petition.[8]  They ask the Court to allow further discovery before requiring them to make an additional response and to allow them to amend their claim to include a cause of action for common law unreasonable debt collection and to further demonstrate the fraud.  Plaintiffs maintain that they have presented documents that show that BABA has miscalculated the amount owed by Plaintiffs, and wrongfully added charges of more than $10,000.00 to Plaintiffs'

---

[8]  Under Texas law, the statute of frauds applies to loan agreements for amounts exceeding $50,000.00 and requires that they be in writing and signed by the party to be bound in order to be enforceable.  Tex. Bus. Code Ann. § 26.02(a)-(b).  "'Promissory estoppel is a narrow exception to the statute of frauds.'"  *Hurd*, 2012 WL 1106932, at *10, *quoting Schuhart v. Chase Home Fin., LLC*, Civ. A. No. C-05-385, 2006 WL 1897263, * 4 (S.D. Tex. July 10, 2006).  To state a claim for the defense of promissory estoppel, the plaintiff must allege facts showing (1) a promise, (2) foreseeability of reliance on that promise by the promisor, and (3) substantial reliance on the promise by the promisee to its detriment.  *Henry Schein, Inc. v. Stromboe*, 102 S.W. 3d 675, 686 n.25 (Tex. 2002), *citing English v. Fischer*, 660 S.W. 2d 521, 524 (Tex. 1983).  Furthermore the plaintiff must allege facts showing that "the defendant promised to sign an agreement satisfying the statute of frauds."  *Cavil v. Trendmaker Homes, Inc.*, Civ. A. No. G-10-304, 2012 WL 170751, *7 (S.D. Tex. Jan. 19, 2012)(*citing* "Moore" Burger, Inc. v. Phillips Pet. Co., 492 S.W. 2d 934, 937 (Tex. 1972)), *appeal dism'd*, No. 12-40195 ( 5th Cir. May 10, 2012). An alleged oral agreement not to foreclose while a loan modification application is pending would alter the written loan agreement in the promissory note and the deed of trust and thus would be unenforceable unless memorialized in writing.  *Enis v. Bank of America, N.A.*, Civ. A. No. 3:12-CV-0295-D, 2012 WL 4741073, *3 (N.D. Tex. Oct. 3, 2012).  The statute of frauds does not bar a promissory estoppel claim based on an oral promise to sign an *existing* written contract that satisfies the statute of frauds. *Nagle v. Nagle*, 633 S.W. 2d 796, 800 (Tex. 1982); *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549 (5th Cir. 2010).  Here Plaintiffs have not alleged any written agreement other than the Texas Home Equity Security Instrument, so their potential or implied claim for promissory estoppel fails as a matter of law.

account, and added a forced insurance payment and an escrow requirement, but fail to point out where and why the charges are erroneous. (#7, Plaintiffs' Response to BANA's first motion to dismiss.)

### Court's Decision

With regard to Plaintiffs' request for discovery, under *Iqbal*, the Supreme Court made clear that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 129 S. Ct. at 1949. Because Plaintiffs fail to state a legally cognizable claim or a plausible one, they are not now entitled to discovery.

Whether a plaintiff is a "consumer" under the DTPA is a question of law for the Court. *Crone v. Bank of America, N.A.*, No. 4:11-CV-733, 2012 WL 4754434, *4 (E.D. Tex. Sept. 6, 2012), *citing Holland Mortgage & Inv. Corp. v. Bone*, 751 S.W. 2d 515, 517 (Tex. App.-Houston[1st Dist.] 1987, writ ref'd n.r.e.). The Court must examine the object of the transaction to decide whether a plaintiff is a consumer within the statute. *Id., citing La Sara Grain Co.*, 673 S.W. 2d at 567. Someone whose objective is to borrow money does not qualify as a consumer for purposes of the DTPA because "the lending of money does not involve either the purchase or lease of a good or service." *Id., citing Riverside Nat'l Bank v. Lewis*, 603 S.W. 2d 169, 173 (Tex. 1980). Plaintiffs' claims here arise out of a loan, which they sought to modify; they did not seek to

purchase or lease any goods or service from BANA.  Thus the Court agrees with BANA that they are not consumers under the DTPA and thus cannot bring a claim under that statute.  *See also Fix v. Flagstar Bank, FSB*, 242 S.W. 3d 147, 160 (Tex. App.--Fort Worth 2007, pet. denied)(the refinance of a home equity loan cannot qualify as a good or service under the DTPA); *Marketic*, 436 F. Supp. 2d at 855 (person who obtains a home equity loan does not obtain a "good" or "service" to qualify as a consumer under the DTPA); *Cuevas v. BAC Home Loans Servicing, LP*, Civ. A. No. 4:10-CV-31, 2012 WL 4339063, *4 (S.D. Tex. Sept. 19, 2012)("Courts have held that 'subsequent actions related to mortgage accounts--for example, extensions of further credit or modifications of the original loan--do not satisfy the 'good or services' element of the DTPA."), *citing Broyles,* 2011 WL 1428904, *4.

The Court also agrees with BANA that as a matter of law Plaintiffs fail to state a claim for negligence.  To state a claim for negligence under Texas law a plaintiff must allege a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach."  *Nabors Drilling*, 288 S.W. 3d at 404.  Generally there is no duty of good faith in lender/lendee relationships.  *Vogel v. Travelers Indem. Co.*, 966 S.W. 2d 748, 753 (Tex. App.--San Antonio 1998, not pet.), *citing FDIC v. Coleman*, 795 S.W. 2d 706, 709 (Tex. 1990). Moreover Plaintiffs allege that the duties breached by BANA were contractually based.  Texas

imposes an implied duty of good faith and fair dealing in a contract only when there is a special relationship between the parties. *UMLIC VP LLC*, 176 S.W. 3d at 612. In Texas there is "no special relationship between a mortgagor and mortgagee" that gives rise to a duty of care. *Collier v. Wells Fargo Home Mortg.*, No. 7:04-CV-086-K, 2006 WL 1464170, *8 (N.D. Tex. May 26, 2006)(and cases cited therein). Plaintiffs fail to identify any provision in the Deed of Trust that creates a duty of good faith and fair dealing and they have no other written agreement with BANA, so the claim fails. *See, e.g., Wiley v. U.S. Bank, N.A.*, 2012 WL 1945614, *7 (N.D. Tex. May 30, 2012); *Bryant v. Bank of America, N.A.*, No. 4:11-CV-448, 2012 WL 2681361, *8 (E.D. Tex. June 6, 2012).

Furthermore, under the economic loss rule, when the plaintiff alleges only an economic loss arising out of the contractual relationship between the parties, the plaintiff cannot assert a negligence cause of action. *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2414, 2012 WL 555155, *5 (N.D. Tex. Feb. 2012), *citing Jim Walter Homes, Inc. v. Reed*, 711 S.W. 2d 617, 618 (Tex. 1986).; *Ellis v. PNC Bank, N.A.*, 2012 WL 2958266, *4 (S.D. Tex. July 19, 2012). The economic loss doctrine has frequently been used to bar claims for negligence and other tort claims when the parties' relationship and its attendant duties arise from contract. *Southwestern Bell Tel. Co. v. Delanney*, 809 S.W. 2d 493, 494-95 (Tex. 1991)("if the defendant's conduct . . . would give rise to

liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract").

Plaintiffs assert a cause of action for negligent misrepresentation. To state a claim for negligent misrepresentation, a plaintiff must allege facts showing that (1) a misrepresentation was made by the defendant in the course of his business or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered a pecuniary loss by justifiably relying on the representation. *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 734 (N.D. Tex. Feb. 10, 2011), *citing Fed. Land Bank Ass'n v. Sloane*, 825 S.W. 2d 439, 442 (Tex. 1991). Furthermore, the misrepresentation must be in regard to an existing fact. *Allied Vista, Inc. v. Holt*, 987 S.W. 2d 138, 141 (Tex. App.--Houston [14th Dist.] 1999, pet. denied). "A promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact." *BCY Water Supply Corp. v. Residential Invs., Inc.*, 170 S.W. 3d 596, 603 (Tex. App.--Tyler 2005, pet. denied).

According Plaintiffs, BANA gave the "false assurances that the home would not be foreclosed while their requests for modifications were pending." First Amended Petition, #5 at ¶ 5(c). They also

claim that Bank of America misrepresented to Plaintiffs that
delinquency was required to qualify for a modification.  Relying
upon this advice, Plaintiffs allegedly fell into delinquency, which
generated additional charge.  When BANA agents were contacted,
the[y] represented that the loan would be modified, but it never
was modified.  *Id.* at at ¶ 30; *see also* ¶ 5(d).  Furthermore BANA
purportedly misrepresented the basis for denying modification at
different times for different reasons:  too much income, too little
income to support modified payments, too many telephone calls,
situation not critical, and inability to reach plaintiffs.  *Id.* at
¶ 36; *see also* ¶ 5(e).

The negligent misrepresentation claims fail for several
reasons.  The alleged oral promises challenged here relate not only
to the Plaintiffs' loan modification application, but also to the
contractual lien on Plaintiffs' home.  These alleged
misrepresentations do not arise independently of the underlying
contract between the parties, but would alter rights and
obligations of the parties established in the written Texas Home
Equity Security Instrument.  Thus the misrepresentation cause of
action is barred by the economic loss rule and the alleged oral
false promises are unenforceable under the statute of frauds, Tex.
Bus. & Com. Code Ann. § 26.02(a)(b).  *Enis,* 2012 WL 4741073, *3,
*citing Bryant*, 2012 WL 2681361, *12 ("[W]hen a modification relates
to a matter that must be in writing the modification must also be

in writing."); *Myers v. Bank of America, N.A.*, No. 4:11-cv-457, 2012 WL 1107687, at *4 (E.D. Tex. Mar. 31, 2012)(finding that plaintiffs' allegations that they were approved for a loan modification, that they would soon receive it, and that they were not at risk of foreclosure, although characterized as negligent misrepresentations, flow solely from the note and deed of trust because they would not exist absent the contractual relationship between the parties).[9] Moreover most of the alleged misrepresentations are promises of future conduct and thus not actionable. *See, e.g., Kazmi v. BAC Home Loans Servicing, L.P.*, No. 4:11-CV-275, 2012 WL 629440, *24 (E.D. Tex. Feb. 3, 2012)("purported representations that Plaintiffs would receive a loan modification or that foreclosure would not occur pending modification is [*sic*] not actionable because it is a promise of future conduct"), *report and recommendation adopted*, 2012 WL 629433 (E.D. Tex. Feb. 27, 2012).

The TDCA is designed to "prevent creditors from preying upon a consumer's fear and ignorance of the law to pursue allegedly delinquent debts." *Brown v. Oaklawn Bank*, 718 S.W. 2d 678, 680 (Tex. 1986). It prohibits debt collectors from using "threats,

---

[9] A plaintiff may avoid the economic loss rule and bring a tort claim arising out of a contractual relationship only when the defendant's conduct gives rise to liability "'independent of the fact that a contract exists between the parties.'" *Owens v, BAC Home Loans Servicing, LP*, H-11-2742, 2012 WL 1494231, *5 (S.D. Tex. Apr. 27, 2012), *quoting Bell Tel. Co. v. DeLanney*, 809 S.W. 2d 493, 494 (Tex. 1991).

coercion or attempt to coerce that . . . threaten[] to take an action prohibited by law. Tex. Fin. Code § 392.301(a)(8). It also forbids debt collectors from making fraudulent, deceptive or misleading representations that "represent[] falsely the status or nature of services rendered by the debt collector or the debt collector's business." *Id.* at § 392.304(a)(14). As noted by BANA, "debt collection" is defined under § 392.001(5) as the "action, conduct or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due to a creditor." Plaintiffs complain that BANA violated the TDCA by adding thousands of dollars in late fees when its agents represented that Plaintiffs' modification would not be approved if they continued to pay their mortgage during the modification period. Plaintiffs fail to indicate the particular character or amount of the interest, charges, fees or expenses or allege facts showing that they are unauthorized by the loan documents. *See, e.g., Bryant*, 2012 WL 2681361, at *13. Section 392.303(a)(2) forbids a debt collector from collecting or attempting to collect interest or charges not "expressly authorized by the agreement creating the obligation or legally charged to the consumer." *See, e.g., Stapp*, 2012 WL 3853440, at *7. Here the security instrument specifically allows imposition of the late charges, but Plaintiffs ignore the statement in the Texas Home Security Instrument ( Ex. A to #9): "Borrower shall pay when due the principal of, and interest on, the debt

-30-

evidenced by the Note and *any late charges due under the Note* [emphasis added]."

Since the language of Federal Rule of Civil Procedure 15(a) ("The court should freely give leave when justice so requires.") "'evinces a bias in favor of granting leave to amend," the court must find a "substantial reason" to deny amendment. *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, Civ. A. No. H-05-4389, 2006 WL 2521411, *3 (S.D. Tex. Aug. 29, 2006), *quoting Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004), and *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Factors for the court to consider in determining whether there is a substantial reason to deny leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). Plaintiffs here have already amended once, and seemingly in an inept effort to reverse the removal of this action to federal court. More significant here, a court should deny leave to amend if it determines that "the proposed change clearly . . . advances a claim. . . that is legally insufficient on its face . . . ." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990). The Court finds that the claims asserted by Plaintiffs here fail as a matter of law

and that granting leave to amend would not cure the problem.

Accordingly, for the reasons stated above, the Court

ORDERS that BANA's motion to dismiss Original Petition (#4) is MOOT.  The Court further

ORDERS that Plaintiffs' motion to remand (#6) is DENIED. Finally the Court

ORDERS that Defendant's motion to dismiss the First Amended Petition is GRANTED.

**SIGNED** at Houston, Texas, this 17th day of January, 2013.

_____

MELINDA HARMON
UNITED STATES DISTRICT JUDGE